**HEFNER, STARK & MAROIS, LLP**
Kirk E. Giberson (CA Bar Assn. No. 125155)
2150 River Plaza Drive, Suite 450
Sacramento, CA 95833-3883
Telephone: (916) 925-6620
Fax No: (916) 925-1127
Email: kgiberson@hsmlaw.com

Attorney for Defendant and Cross-Complainant
Patrick K. Willis Company, Inc.

# IN THE UNITED STATES DISTRICT COURT

## Central District of California

| | |
|---|---|
| ALEJANDRA MENDEZ, | Case No. 15-CV-01573-PSG |
| Plaintiff, | |
| v. | **MEMORANDUM OF CONTENTIONS OF FACTS AND LAW** |
| TNT TOWING & RECOVERY, LLC, OTHMAN MOHAMMED EMAD, PATRICK K. WILLIS COMPANY, INC., and DOES 1 through 10, inclusive, | Trial Date: May 4, 2016 |
| Defendants. | |

Defendant and cross-complainant Patrick K. Willis Company, Inc. ("PKW"), submits the following memorandum of contentions of facts and law in this:

**Facts**

On March 6, 2015, plaintiff Alejandra Mendez ("Ms. Mendez") filed this action. Ms. Mendez and plaintiff Maria Cosio subsequently filed a First Amended Complaint (the "FAC"), which became the operative complaint in the action. Without admitting the allegations, PKW incorporates the allegations of the FAC here and attaches a copy of the FAC as Exhibit "A" hereto.

PKW and defendant and cross-defendant TNT Towing & Recovery, LLC ("TNT") are parties to a February 8, 2010, written agreement entitled "Outside Agency Service Agreement," a true and correct copy of which is attached hereto as Exhibit "B" ("the Agreement"). At

1

Case No. 15-CV-1573-PSG
Mendez v. TNT Towing & Recovery, LLC, et al.

Memorandum of Facts and Law
K:\Patrick K Willis Co Inc\Mendez v (0052-0087)\pldg memo of facts and law.wpd

HEFNER, STARK & MAROIS, LLP
Sacramento, California

1   section 8 of the Agreement, TNT expressly promised that it would defend, indemnify, and hold

2   harmless PKW in all matters related to TNT's repossession of vehicles.  The subject matter

3   of the FAC falls directly under the terms of section 8 of the Agreement, and TNT is thereby

4   obligated to fully defend, indemnify, and hold harmless PKW in this matter.  PKW is entitled

5   to recover from TNT all its expenses and damages associated with this action, including all

6   attorney's fees and other legal costs, and to be fully indemnified and held harmless against

7   any judgment issued against PKW herein and any other loss, of any sort, PKW incurs as a

8   result of this action and the dispute underlying it.

9       As this litigation moved forward, it became evident (1) the defendants almost certainly

10   faced *some* liability, and (2) the plaintiffs would be entitled to recover their attorney's fees -

11   even if disproportionately large compared to the plaintiffs' recovery.  Accordingly, PKW

12   undertook efforts to settle the case, eventually paying $35,000 to the plaintiffs' in complete

13   satisfaction of all claims for damages, costs, and attorney's fees.  PKW took this step as the

14   best alternative to mitigate its exposure and the exposure of the other defendants.  Under the

15   Agreement, PKW seeks indemnity for the amount it paid and all its fees and costs incurred in

16   this matter.  PKW also seeks this indemnity under the theory of equitable indemnity.

17   <u>Law</u>

18       There are no significant legal issues.  PKW is entitled to full indemnity under the

19   Agreement and under the theory of equitable indemnity.

20

21   Dated: March 28, 2016                    HEFNER, STARK & MAROIS, LLP

22

23                                           By _____

24                                           Kirk E. Giberson
                                            Attorney for Patrick K. Willis Company, Inc.
25

26

27

28

2

HEFNER, STARK & MAROIS, LLP
Sacramento, California

# EXHIBIT "A"

1   ALEXANDER B. TRUEBLOOD (State Bar No. 150897)
    TRUEBLOOD LAW FIRM
2   10940 Wilshire Blvd., Suite 1600
    Los Angeles, California 90024
3   Telephone: (310) 943-0298
    Facsimile: (310) 943-2255
4
    Attorneys for Plaintiffs
5   ALEJANDRA MENDEZ and MARIA COSIO

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9

10  ALEJANDRA MENDEZ, and          CASE NO.:  2:15-CV-01573 PSG (JCx)
    MARIA COSIO,
11                                 **FIRST AMENDED COMPLAINT**
                Plaintiffs,
12
            vs.
13
    OTHMAN MOHAMMED EMAD,
14  PATRICK K. WILLIS COMPANY,
    INC., ROBERT ANDERSON, and
15  DOES 1 through 10, inclusive,

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28
                              - 1 -

1    Plaintiffs Alexandra Mendez and Maria Cosio hereby allege the following

2  against defendants Othman Mohammed Emad dba TNT Recovery, Patrick K. Willis

3  Company, Inc. ("PK Willis"), Robert Anderson, and Does 1 through 10:

4                      **OPERATIVE FACTS**

5       1.      Plaintiff Maria Cosio purchased a vehicle on credit for personal, family,

6  or household purposes from a dealership, and signed a retail installment sales

7  contract with the dealer, which was then assigned to US Bank. Ms. Cosio and her

8  daughter, plaintiff Alejandra Mendez, agreed that Alejandra would drive and pay for

9  the vehicle, and that Cosio would transfer title to plaintiff upon satisfaction of the

10  retail installment sales contract. Plaintiff Mendez thus had a partial ownership

11  interest in the vehicle, despite not being a formal party on the financing contract

12  between Cosio and US Bank.

13       2.      When payments on the contract became past due, US Bank hired

14  defendant PK Willis dba American Recovery Services, as an independent contractor,

15  to repossess plaintiff's vehicle.  PK Willis in turn hired defendant Emad, a sole

16  proprietor who uses the dba "TNT Recovery," as its agent, to physically repossess

17  the vehicle.

18       3.      Emad employed and paid two persons to locate and repossess plaintiffs'

19  vehicle, Kisa Hayes and defendant Robert Anderson. Defendant Anderson was

20  neither licensed with the Department of Consumer Affairs, Bureau of Security and

21  Investigative Services, nor registered as a repossession employee.  Emad claims that

22  Hayes was registered as a repossession agency employee with the BSIS.

23       4.      Both Anderson and Hayes, while in the course and scope of their

24  employment by Emad, took various actions to locate and repossess the vehicle.

25  Plaintiffs are informed and believe that Anderson and Hayes located the vehicle in

26  part by using a skip-tracing or license plate recognition database.  Then, Anderson

27  and Hayes together physically repossessed plaintiffs' vehicle at Crenshaw High

28  School.

1      5.    Anderson and/or Hayes, in the course of the repossession, took photos

2  of the vehicle and repossession site, in order to embarrass plaintiffs.  Either during

3  the repossession, or immediately thereafter, Anderson and/or Hayes publicly posted

4  on Twitter several pictures of the vehicle hooked up to the tow truck, with the license

5  plate visible, a picture of the Crenshaw High School sign, and a message stating

6  "Snatched her shit from weakass Crenshaw High."  Anderson and/or Hayes mass

7  broadcasted the message and pictures to #REPOLIST and other Twitter users.  A co-

8  worker of plaintiff Mendez saw the posts and informed her, to her great

9  embarrassment and humiliation.

10                        **JURISDICTION AND VENUE**

11      6.    The court has original jurisdiction over this matter pursuant to 15 U.S.C.

12  § 1692k(d).  The court has supplemental jurisdiction over plaintiffs' state law claims

13  pursuant to 28 U.S.C. § 1367(a).

14      7.    Venue is proper in the Central District of California because a

15  substantial part of the events or omissions giving rise to the claim occurred in this

16  district.  In addition, defendants have sufficient contacts in this district to subject

17  them to personal jurisdiction here.

18                             **PARTIES**

19      8.    Plaintiff Alejandra Mendez is a California citizen, and a resident of the

20  county of Los Angeles, and is over 18 years of age.

21      9.    Plaintiff Maria Cosio is a California citizen, and a resident of the county

22  of Los Angeles, and is over 18 years of age.

23      10.    Defendant Patrick K. Willis Company, Inc. is a California corporation

24  headquartered in Sacramento county, and doing regular business in Los Angeles

25  county.

26      11.    Defendant Othman Mohammed Emad is an individual at least 18 years

27  of age, of unknown residence.

28

- 3 -

1    12.    Defendant Robert Anderson is an individual at least 18 years of age, of

2    unknown residence.

3    13.    Defendants Does 1 through 10 are persons or entities whose true names

4    and capacities are presently unknown to plaintiffs, and who therefore are sued by

5    such fictitious names. Each of the fictitiously named defendants perpetrated some or

6    all of the wrongful acts alleged herein, is responsible in some manner for the matters

7    alleged herein, and is jointly and severally liable to plaintiff. Plaintiffs will seek leave

8    of court to amend this complaint to state the true names and capacities of such

9    fictitiously named defendants when ascertained.

10    14.    Each of the defendants were the agents and/or employees of each other

11    and were acting in the course and scope of their agency, employment and authority

12    and with the permission and consent of their co-defendants in committing the acts

13    alleged.  The defendants are jointly and severally liable to plaintiffs.

14                          **FIRST CAUSE OF ACTION**

15    **(By Plaintiffs Against All Defendants For Violations of the Federal Fair Debt
Collections Practices Act, 15 U.S.C. § 1692 et seq)**

16    15.    Plaintiffs reallege and incorporate herein by reference the allegations of

17    each and every paragraph above.

18    16.    Plaintiffs are each a "consumer" who allegedly owed a "debt," and

19    defendants are "debt collectors", as those terms are defined at 15 U.S.C. § 1692a.

20    Defendants use instrumentalities of interstate commerce or the mails in a business

21    the principal purpose of which is the enforcement of security interests.  Defendants

22    also regularly collect or attempt to collect, directly or indirectly, debts owed or due

23    or asserted to be owed or due another.  Defendant PK Willis is a repossession agency

24    licensed with the BSIS.

25    17.    Defendants violated 15 U.S.C. § 1692f(6) by taking any nonjudicial

26    action to effect dispossession or disablement of property when (1) there was no

27    present right to possession of the property claimed as collateral through an

28    enforceable security interest; and/or (2) the property was exempt by law from such

1    dispossession or disablement.  Defendants had no present right to possession of the

2    subject vehicle, because defendant Anderson was not licensed by the BSIS as a

3    repossession agency nor registered as a repossession agency employee, at the time of

4    the repossession.

5         18.    Plaintiffs are entitled to any actual damages sustained by them as a

6    result of defendants' conduct in an amount according to proof, pursuant to 15 U.S.C.

7    § 1692k.

8         19.    Plaintiffs are entitled to statutory damages of $1,000 against each

9    defendant, pursuant to 15 U.S.C. § 1692k.  Defendants have frequently and

10   persistently failed to comply with the FDCPA, and have violated the FDCPA

11   intentionally.  The nature of defendants' violations justifies the maximum statutory

12   damages award available.

13        20.    Plaintiffs are entitled to the costs of the action, together with a

14   reasonable attorneys fee, pursuant to 15 U.S.C. § 1692k.

15        21.    Plaintiffs seek treble damages and their reasonable attorneys fees and

16   costs, pursuant to Code of Civil Procedure § 1029.8.

17        WHEREFORE, plaintiffs pray for relief as set forth below.

18   **SECOND CAUSE OF ACTION**

19   **(By Plaintiffs Against All Defendants for Violations of The Rosenthal Fair Debt
     Collection Practices Act, Cal. Civ. Code §§ 1788, et seq.)**

20        22.    Plaintiffs reallege and incorporate herein by reference each and every

21   paragraph set forth above.

22        23.    The California Legislature has found that "unfair or deceptive debt

23   collection practices undermine the public confidence which is essential to the

24   continued functioning of the banking and credit system and sound extensions of

25   credit to consumers." Cal. Civ. Code § 1788.1(a)(2). It thus enacted the Rosenthal

26   Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, et seq. (the "Rosenthal

27   Act"), to ensure the integrity of our banking and credit industry. Id. § 1788.1(b).

28

24.     "Debt" is defined under the Rosenthal Act to mean "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person." Civil Code § 1788.2(d).

25.     The defendants sued on this cause of action at all times relevant herein were "debt collectors" within the meaning of Civil Code § 1788.2(c), in that they regularly and in the ordinary course of business, on behalf of themselves or others, engage in acts and practices in connection with the collection of property which is due or alleged be due or owing from a natural person to another person by reason of a consumer credit transaction.

26.     Defendants violated Civil Code § 1788.10(a) by using criminal means to cause harm to the property or reputation of any person.  Emad, and therefore PK Willis by vicarious liability, committed a misdemeanor under Bus. & Prof. Code § 7502.1(a) by knowingly engaging Anderson, an nonexempt, unlicensed person, to repossess the vehicle.  Defendant Anderson, and therefore the other defendants by vicarious liability, violated Bus. & Prof. Code § 7502.1(a) and committed a misdemeanor, by engaging in unlicensed activity in violation of Bus. & Prof. Code § 7502.  Defendant Emad, and therefore PK Willis by vicarious liability, violated Bus. & Prof. Code § 7502.1(a) and committed a misdemeanor, by conspiring with another person (Anderson) to violate the Collateral Recovery Act.

27.     Defendants violated Civil Code § 1788.11(a) by using obscene or profane language.

28.     Defendants violated Civil Code § 1788.12(c) by communicating to other persons a list of debtors which disclosed the nature or existence of a consumer debt, also known as a "deadbeat list."

29.     Defendants violated Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692d, by engaging in conduct the natural consequence of which was to harass, oppress, or abuse any person in connection with the collection of an alleged debt.

- 6 -

30.    Defendants violated Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692f, by using unfair or unconscionable means to collect or attempt to collect an alleged debt.

31.    As a proximate result of defendants' violations of the Rosenthal Act, plaintiff has been damaged in amounts which are subject to proof.

32.    Plaintiffs are entitled to recover their actual damages pursuant to Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692k(a)(1).

33.    Defendants' violations of the Rosenthal Act were willful and knowing. Plaintiffs are entitled to recover statutory damages of $1,000 per defendant pursuant to Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692k(a)(2)(A).

34.    Plaintiffs are entitled to recover their attorneys fees and costs pursuant to Civil Code § 1788.17, incorporating by reference 15 U.S.C. § 1692k(a)(3).

35.    Plaintiffs seek treble damages and their reasonable attorneys fees and costs, pursuant to Code of Civil Procedure § 1029.8.

WHEREFORE, plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTION

### (By Plaintiffs Against All Defendants for Invasion of Privacy)

36.    Plaintiffs reallege and incorporate herein by reference the allegations of all paragraphs above.

37.    Plaintiffs had and continue to have a reasonable expectation of privacy with respect to their private financial matters, their license plates, and the location of plaintiff Mendez's work.

38.    Defendants seriously invaded plaintiffs' right to privacy in a manner which constituted an egregious breach of social norms.

39.    As a proximate result of defendants' conduct, plaintiffs have suffered damages in an amount to be determined according to proof.

40.    Defendants acted with malice, oppression, and/or fraud towards plaintiffs within the meaning of Civil Code § 3294, thereby entitling them to an

1  award of punitive damages. Defendants' corporate officers, directors, or managing

2  agents are personally guilty of oppression, fraud or malice, had advance knowledge

3  of the unfitness of the employees who acted towards plaintiffs with malice,

4  oppression, or fraud, employed such employees with conscious disregard for the

5  rights or safety of others, and/or themselves authorized or ratified the wrongful

6  conduct or knowingly accepted and retained the benefits of the wrongdoing.

7  WHEREFORE plaintiffs pray for relief as set forth below.

8  ## FOURTH CAUSE OF ACTION

9  **(By Plaintiff Mendez Against All Defendants for Intentional Infliction of Emotional Distress)**

10  41.  Plaintiff realleges and incorporates herein by reference the allegations of

11  all paragraphs above.

12  42.  Defendants engaged in extreme, outrageous and unreasonable acts with

13  respect to plaintiff Mendez, with a willful intent to injure her.  These acts went

14  beyond the bounds of decency expected in a civilized society.

15  43.  Defendants intended to cause plaintiff Mendez to suffer emotional

16  distress, and/or engaged in their outrageous conduct with reckless disregard of the

17  probability of causing her to suffer emotional distress.

18  44.  As a direct and proximate result of defendants' outrageous conduct,

19  plaintiff suffered severe mental distress, mental suffering, and/or mental anguish,

20  including nervousness, embarrassment, anxiety, worry, humiliation, and indignity.

21  45.  As a proximate result of defendants' conduct, plaintiff has suffered

22  damages in an amount to be determined according to proof.

23  46.  Defendants acted with malice, oppression, and/or fraud towards plaintiff

24  within the meaning of Civil Code § 3294, thereby entitling her to an award of

25  punitive damages. Defendants' corporate officers, directors, or managing agents are

26  personally guilty of oppression, fraud or malice, had advance knowledge of the

27  unfitness of the employees who acted towards plaintiff with malice, oppression, or

28  fraud, employed such employees with conscious disregard for the rights or safety of

others, and/or themselves authorized or ratified the wrongful conduct or knowingly accepted and retained the benefits of the wrongdoing.

WHEREFORE plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION
### (By Plaintiffs Against All Defendants for Negligence)

47.     Plaintiff realleges and incorporates herein by reference the allegations of all paragraphs above.

48.     Defendants had a legal duty to use due care in their hiring practices with respect to conducting physical repossessions.  Conducting physical repossessions is an inherently dangerous activity, and is therefore subject to strict state regulation and licensing.

49.     Defendant Emad failed to exercise due care in hiring both Kisa Hayes and Robert Anderson, who were both unfit for their jobs.  Emad also failed to exercise due care in supervising Anderson and Hayes, including a complete absence of any written guidelines or procedures for compliance with the Collateral Recovery Act or fair debt collection practice laws.

50.     Defendant PK Willis failed to exercise due care in hiring Emad, who was unfit for his job, and who failed to promulgate standards and procedures for his company's compliance with applicable laws.

51.     As a result of defendants' negligence, plaintiffs have been damaged in amounts which are subject to proof.

52.     Plaintiffs seek treble damages and their reasonable attorneys fees and costs, pursuant to Code of Civil Procedure § 1029.8.

## SIXTH CAUSE OF ACTION
### (By Plaintiffs Against All Defendants for Violations of the Collateral Recovery Act, Bus. & Prof. Code § 7502.6 )

53.     Plaintiffs reallege and incorporate herein by reference the allegations of all paragraphs above.

54.   Defendant Anderson is a repossession agency within the meaning of Bus. & Prof. Code § 7500.2, in that he engages in business and/or accepts employment to locate or recover collateral, for consideration.  He is prohibited from these activities pursuant to Bus. & Prof. Code § 7502, because he is not licensed in California as a repossession agency, nor is he a registered repossession agency employee.

55.   Bus. & Prof. Code § 7502.6(a) provides that any member of the general public may bring an action against an unlicensed person or entity engaging in the acts of a repossession agency, to recover civil fines of $10,000, and an injunction.

56.   Plaintiffs seek civil fines of $10,000 against defendants, and an injunction to prevent further unlicensed activity.

57.   Plaintiffs seek treble damages and their reasonable attorneys fees and costs, pursuant to Code of Civil Procedure § 1029.8.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief:

1.   For actual damages;

2.   For statutory damages and/or civil fines;

3.   For punitive damages;

4.   For an injunction;

5.   For pre-judgment interest to the extent permitted by law;

6.   For an award of attorneys' fees, costs and expenses incurred in the investigation, filing and prosecution of this action; and

7.   For such other and further relief as the Court may deem just and proper.

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs hereby demand a trial by jury under the United States Constitution.

3

4    Dated: September 16, 2015          TRUEBLOOD LAW FIRM

5

6                                          /s/
                                     Alexander. B. Trueblood

7                                    Attorneys for Plaintiffs
                                     ALEJANDRA MENDEZ and MARIA
8                                    COSIO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT "B"**

## OUTSIDE AGENCY SERVICE AGREEMENT

This OUTSIDE AGENCY SERVICE AGREEMENT ("Agreement") is entered into between PATRICK K. WILLIS COMPANY, INC., a California corporation, dba AMERICAN RECOVERY SERVICE and dba SKIPBUSTERS ("Referral Agency") and _T n T Recovery_, a _____ ("Outside Agency"), effective the date this Agreement is executed by Referral Agency (the "Effective Date").

### RECITAL

A.    Referral Agency contracts with various banks and financial institutions (herein "Clients," or individually, "Client") to recover collateral, primarily automobiles, financed by Clients. Due to the location of the collateral to be recovered, Referral Agency elects to refer certain assignments from Clients to outside agencies located in the vicinity of the collateral to be recovered;

B.    Outside Agency is in the business of recovering collateral and wishes to establish a relationship with Referral Agency so it can receive assignments from Referral Agency;

C.    In order to set forth the contractual relationship between Referral Agency and Outside Agency which will govern the terms and conditions upon which Referral Agency will generate "Recovery Assignments" to Outside Agency, and upon which Outside Agency will receive assignments from Referral Agency, the parties hereby enter into the following agreement.

### AGREEMENT

IN WITNESS WHEREOF, Referral Agency and Outside Agency agree as follows:

1.    REFERRAL OF ASSIGNMENTS.

At the election and discretion of Referral Agency, assignments for the repossession of collateral on behalf of Clients may be provided to Outside Agency from time to time during the term of this Agreement. Referral Agency shall not, however, be under any obligation to refer any such assignments to Outside Agency, and Referral Agency may, in its complete discretion, elect to refer assignments for recovery of collateral on behalf of Clients to other agencies, including agencies that conduct similar businesses and/or in the same geographical area as that of Outside Agency. The terms and conditions of this Agreement shall apply to all assignments for the recovery of collateral provided by Referral Agency to Outside Agency during the term of this Agreement.

All account activity including, but not limited to, the acceptance or rejection of an assignment, updates, repossession and condition report reporting requirements, hold and or close process shall be transmitted through WebTracker within the timeframes stipulated in this agreement or addendum.

Initials: _E. Q_ Date: _2/8_          OSA Contract January 2010     Page: 1

## 2.    POLICIES AND PROCEDURES.

In addition to the terms of this Agreement, the activities of Outside Agency shall be conducted in accordance with and governed by the policies and procedures adopted by Referral Agency ("Policies and Procedures"). Referral Agency's current Policies and Procedures are set forth in Exhibit "A" attached to this Agreement and made a part hereof. Referral Agency's Policies and Procedures may be modified from time to time by Referral Agency in its discretion, and shall be binding upon Outside Agency upon Outside Agency's receipt of notice of the modification(s).

## 3.    OBLIGATIONS OF OUTSIDE AGENCY.

Outside Agency agrees that it will do the following:

a.    Comply with the terms of this Agreement and all applicable Policies and Procedures. Comply with all local, state or federal regulations, including but not limited to the Outside Agency's business classification and or licensing requirements.

b.    Comply with all laws and regulations applicable to Outside Agency in recovering the collateral subject to any assignment given by Referral Agency to Outside Agency. Outside Agency acknowledges that it is not authorized by Referral Agency or any Client to engage in any activities or conduct pursuant to any assignment from Referral Agency that constitutes debt collection within the meaning of the Fair Debt Collection Act, 12 U.S.C. 1338 et seq., or any similar state law.

c.    In addition to the express requirements under this Agreement, comply with and ensure future compliance with prevailing industry standards for the repossession of collateral, confidentiality, background/pre-screening of employees, and measures for the protection of identity of Referral Agency employees, clients and borrowers.

## 4.    REPRESENTATIONS AND WARRANTIES OF REFERRAL AGENCY.

Referral Agency represents and warrants to Outside Agency:

a.    That, to the best of its knowledge, each Client has the legal right to repossess the collateral described in any assignment provided to Outside Agency.

## 5.    COMPENSATION; QUICK PAY DISCOUNT PROGRAM

Outside Agency shall be compensated by Referral Agency for Outside Agency's services under this Agreement in accordance with the Fee Schedule set forth in Referral Agency's Policies and Procedures. Outside Agency may request to be assigned to Referral Agency's Quick Pay Discount Program by completing a contract addendum.

## 6.    REPRESENTATIONS AND WARRANTIES OF OUTSIDE AGENCY.

Outside Agency represents and warrants to Referral Agency:

Initials: _$\mathcal{EVO}$_ Date: _2/8_               OSA Contract January 2010    Page: 2

a.    That Outside Agency is operating as the person(s) or business entity identified in this Agreement, and that such person(s) or business entity possess or possesses all licenses and permits in the State, County or other jurisdiction in which Outside Agency operates in order to allow Outside Agency to repossess the collateral which is the subject of the assignments from Referral Agency to Outside Agency.

b.    Outside Agency has not been convicted of or received a judgment for any material claim or discipline relating to the repossession of collateral within five (5) years prior to the Effective Date. For purposes of the foregoing, "material claim" means any claim for damages (whether for personal injury, property damage, or otherwise) in excess of One Thousand Dollars ($1,000.00) or any claim relating to the alleged violation of any law or regulation pertaining to repossession or debt collection.

7.    **INDEPENDENT CONTRACTOR.**

The relationship created by this Agreement is contractual only, and Outside Agency shall at all times be an independent contractor to Referral Agency. Nothing contained in this Agreement shall be construed as creating any relationship between Referral Agency and Outside Agency other than that of independent contractor. Without limiting the generality of the foregoing, Outside Agency shall have no authority to enter into any contract on behalf of Referral Agency or to otherwise make any representations, agreements or covenants on its behalf. Referral Agency shall have no right to direct or control Outside Agency as to the specific means or manner in which Outside Agency attempts to or does recover possession of any collateral pursuant to assignments from Referral Agency.

8.    **HOLD HARMLESS.**

Outside Agency hereby agrees to defend, indemnify and hold Referral Agency harmless from any and all damages, liability, causes of action, costs, expenses, and whatsoever nature, contingent or liquidated (including attorney's fees), arising from or relating to Outside Agency's acts or omissions in connection with attempting to recover or the recovery of collateral pursuant to any assignments from Referral Agency, including but not limited to any damage or claim for damage to a repossessed vehicle while such vehicle is in the care, control or custody of Outside Agency, excepting only such claims as are the result of the sole negligence or intentional misconduct of Referral Agency. Outside Agency further agrees to defend, indemnify and hold Referral Agency harmless from any and all damages, liability, causes of action, costs, expenses, and whatsoever nature, contingent or liquidated (including attorney's fees), arising from or relating to any breach by Outside Agency of the terms and conditions of this Agreement, excepting only such claims as are the result of Referral Agency's breach of this Agreement. Outside Agency's obligations under the foregoing provisions shall include the duty to defend and/or pay for the defense of Referral Agency with legal counsel that is acceptable to Referral Agency in its sole and complete discretion.

9.    **INSURANCE.**

At all times while this Agreement is in effect, Outside Agency shall maintain comprehensive general liability insurance covering its operations as a licensed repossession agency. The liability certificate/policy must be "per occurrence". Outside Agency must carry such insurance with an insurance company with an A.M. Best Financial Strength Rating of at least A- and in A.M. Best's Financial Size category of X

Initials: _____ Date: _____          OSA Contract January 2010    Page: 3

or higher, with a minimum limit of One Million Dollars ($1,000,000), including coverage for death and personal injury. Outside Agency shall also maintain insurance coverage for damage or claimed damage to the vehicles in its care, custody and control, such as garage keepers, on-hook, non-owned autos, wrongful repossession insurance, and/or cargo insurance. Referral Agency shall be specifically listed as an additional insured on Outside Agency's insurance certificate. Outside Agency must obtain "direct primary" coverage.

> The following minimum coverage's are required:
> $1,000,000 Commercial General Liability Policy
> $1,000,000 Automobile Liability Policy
> $1,000,000 Workers' Compensation Policy [or limit per state guidelines]
> $350,000 Garage-Keepers Direct Primary Policy
> $100,000 On-Hook Policy

Outside Agency shall cause Referral Agency to be named as additional insured under said policy of insurance and shall cause a certificate with an additional insured endorsement or binder to be issued to Referral Agency prior to Outside Agency being given any assignments. The certificate or binder shall contain language such as the following: "As respects operations performed for or on behalf of the certificate holder, Referral Agency will be named as an additional insured on the Outside Agency's general liability, garage liability and worker's compensation policies, and the attached endorsement will be made as a part of the Outside Agency's policy." Any such certificate with additional insured endorsement or binder will contain a provision that such insurance may not be canceled or its coverage reduced without at least thirty (30) days prior written notice to Referral Agency. Any losses incurred due to the inadequacy of Outside Agency's insurance will be the sole responsibility of Outside Agency.

The renewal of the Outside Agency's insurance policy shall commence no later than thirty (30) days prior to the termination of the policy. No later than ten (10) days prior to termination of the policy, the Outside Agency shall provide proof of renewal. In the event Outside Agency looses coverage for any reason, Outside Agency shall immediately cease any repossession activity for Referral Agency and notify Referral Agency.

Outside Agency shall include notice of location of ALL storage lots on the insurance certificate, or by addendum thereto.

10.   PROHIBITION AGAINST ASSIGNMENT.

Outside Agency shall not assign or transfer to any other person or company, any account assigned by Referral Agency hereunder without Referral Agency's prior written consent, which consent may be given or withheld in Referral Agency's sole discretion. All persons used by Outside Agency to carry out and perform the repossession, transport or storage with respect to any account assigned hereunder shall be insured under Outside Agency's policy of insurance described in paragraph 7 hereof. Without the limiting the generality of the foregoing, Outside Agency shall not use independent contractors who are not covered under Outside Agency's policy of insurance. Outside Agency is not authorized to forward work assigned by Referral Agency to an affiliate or any independent contractor. Referral Agency may transfer or assign its rights and/or obligations under this Agreement to any person or entity upon written notice but without

Initials: _G·O_ Date: _7/6_                    OSA Contract January 2010    Page: 4

any requirement for Outside Agency's consent, and Outside Agency will remain fully bound by the terms of this Agreement upon any such transfer or assignment by Referral Agency.

11.   **NOTIFICATION OF REPOSSESSION.**

Outside Agency shall report all repossessions to Referral Agency within two (2) business hours of repossession. Business hours are defined as Monday through Friday between 8:00am and 5:00pm in your time zone excluding major holidays. Condition Reports must be reported within five (5) business hours of repossession. *Reporting of repossession and condition report shall be transmitted through WebTracker. No alternate form of notification is acceptable.*

Outside Agency acknowledges that some Clients have default insurance, which will pay the unpaid balance of a contract upon repossession, but only if the fact of repossession is reported to the insurance company within a short time, such as fifteen (15) days, after repossession. If the Outside Agency fails to timely report a repossession which results in a Client's inability to recover under its default insurance coverage, Outside Agency shall be liable for the amount which such default insurance would have paid had the repossession been timely reported.

Securing valid and legible receipts for all funds paid out to any facility, or impounding jurisdiction, is the responsibility of the Outside Agency. All receipts are to be legible and submitted promptly. Documentation must always contain account/VIN, Payee, amount paid, and date. Failure to provide acceptable receipts could result in delays, or non-payment, for services. Receipts should be loaded into WebTracker.

Outside Agency shall report, in writing, any use force or physical altercation which occurred during a repossession or attempted repossession to Referral Agency immediately.

12.   **TERM.**

The initial term of this Agreement will commence on the Effective Date and terminate on the last day of the twelfth (12th) calendar months after the Effective Date unless it is terminated earlier pursuant to the provisions of this Agreement (the "Initial Term.") Thereafter, this Agreement will automatically renew for additional successive twelve (12) month terms, unless it is terminated earlier pursuant to the provisions of this Agreement. Notwithstanding the foregoing, either party may terminate this Agreement for convenience, for any reason or no reason, upon at least thirty (30) days advance written notice to the other.

13.   **TERMINATION.**

Referral Agency may terminate this Agreement due to Outside Agency's breach of this Agreement upon at least five (5) days advance written notice if the breach is not cured within such five (5) day period, provided that any breach by Outside Agency of its obligations under Sections 6, 8, 13, 14, and 15 of this Agreement shall be considered a non-curable breach, and Referral Agency may immediately terminate this Agreement for such a breach on written notice to Outside Agency without any opportunity to cure such breach. In the event of termination of this Agreement, Outside Agency agrees to relinquish all vehicles and moneys owed to the Referral Agency within three (3) working

Initials: _GD_ Date: _1/8_                OSA Contract January 2010     Page: 5

days of Outside Agency's giving or receipt of notice of termination. Referral Agency agrees to pay all outstanding Invoices to Outside Agency at or before the time of the release of all stored vehicles. In the event Outside Agency ceases to do business, Outside Agency shall relinquish all vehicles and outstanding moneys to Referral Agency within three (3) working days of the cessation of business. Outside Agency will not transfer vehicles to another agent unless specifically directed to do so by Referral Agency.

14.   **STORAGE.**

Outside Agency agrees to advise Referral Agency of the location of a stored vehicle within twenty-four (24) hours of repossession, unless vehicles are stored in only one location that is noted on the insurance certificate.

Outside Agency will notify Referral Agency via e-mail to "transport.info@pkwillis.com" when repossessed vehicles have been in storage for thirty (30) days. A response from Referral Agency will be generated within (24) business hours confirming acknowledgement.

Outside Agency may recover no more than thirty (30) days of storage fees from Referral Agency, unless additional days are authorized in writing from Referral Agency or the Client. (See attached "Policies and Procedures" for standard storage fees.)

15.   **STOP PAYMENT OF LIEN CHECKS.**

Outside Agency is not allowed to stop payment of checks issued by Outside Agency to body shops and/or storage facilities for any repossessed vehicle, unless authorized in writing to do so by Referral Agency.

16.   **CONFIDENTIALITY.**

Outside Agency may, in the performance of its duties on behalf of Referral Agency, come into possession of confidential and/or sensitive information about Referral Agency's business, including but not limited to information pertaining to clients, business forms and practices, Internet databases (WebTracker or other interface with our office), Client's financial and information, borrower information, and other non-public information ("Confidential Information.")

Except as may be required in the course and scope of performing Outside Agency's duties under this Agreement, Outside Agency agrees that it will not at any time during or after the term of this Agreement in any fashion, form or manner, either directly or indirectly, use, divulge, disclose or communicate to any person, firm or corporation, in any manner whatsoever, any Confidential Information. Outside Agency agrees not to disclose to any other agency contracting with Referral Agency or any employee of such a party any Confidential Information except as may be reasonably required for Outside Agency to perform its duties under this Agreement. Outside Agency agrees that they will not entertain, comment, disclose, or otherwise interact with any member of the media in any fashion relating to repossession activity or operations associated with Referral Agency.

Outside Agency understands that the violation of the terms of this Section will be grounds for immediate termination of this Agreement. In addition, Outside Agency

Initials: _G.D_ Date: _7/18_        O&A Contract January 2010        Page: 6

acknowledges and agrees that Referral Agency would suffer irreparable harm in the event of a breach under this Agreement as regards the use or disclosure of Confidential Information and monetary damages will be inadequate to compensate for any such breach. Accordingly, Outside Agency agrees that, in the event of a breach or threatened breach of any of its obligations under this Agreement regarding the use or disclosure of Confidential Information, Referral Agency shall, in addition to and not in limitation of any other rights, remedies or damages available to it at law or in equity, be entitled to seek in the United States District Court for the Eastern District of California, or the Superior Court of the State of California in and for the County of Sacramento or any other court with jurisdiction, a temporary restraining order, preliminary injunction or permanent injunction in order to prevent or to restrain any such breach by Outside Agency.

17.   **EMPLOYEE SCREENING.**

Outside Agency warrants that all employees performing responsibilities relating to Referral Agency shall have been subject to employee screening which shall include:

1. Criminal History Check

2. OFAC (Office of Foreign Assets Control) Check

3. Drivers License (if operating company vehicles)

4. Repossession License (if involved in Repossession activity)

  ✦ (Where required by State Law)

  ✦ (License must be active and in good standing)

Outside Agency represents it is in compliance with United States Executive Order 13224 (or successor orders/legislation) and that, as part of the background check described above, it shall screen vendor personnel who will be providing services for Referral Agency against the Specially Designated Nationals and Blocked Persons Lists published by the Office of Foreign Assets Control and the US Department of the Treasury.

Any person convicted of a felony who has an unsatisfactory driver history, or is listed on the OFAC Watch List, shall not be permitted to handle assignments or access data from the Referral Agency. Outside Agency agrees to provide pre-employment screening information on each of its employees promptly upon request by Referral Agency.

18.   **IDENTITY THEFT/RED FLAG PROVISIONS.**

Protection of Confidential Information.

Outside Agency agrees to protect Confidential Information and may only disclose such information to company employees, clients or agents having a need to know and who are otherwise bound by confidentiality obligations at least as restrictive as those contained in this Agreement. Outside Agency shall use the same care to prevent disclosure of Confidential Information as it uses with respect to its own Confidential Information. Further, both parties shall only use Confidential Information to the extent

Initials: J.O   Date: 1/8

necessary to perform its obligations set forth in this Agreement. The Referral Agency will not reproduce the Disclosing Party's Confidential Information in any form except as required to accomplish the intent of this Agreement.

Gramm-Leach-Bliley Protection and Safeguarding of Information Involving Use of Nonpublic Personal Information.

Outside Agency agrees to comply with Title V of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et. seq. (the "GLB Act") and the implementing regulations and will not use or disclose any nonpublic personal information ("Information") furnished to the other except in accordance with the GLB Act or the Fair Credit Reporting Act 15 U.S.C. § 1681b ("FCRA"). Outside Agency also agrees to comply with company policy designed to meet the objectives outlined in the Interagency Guidelines Establishing Standards for Safeguarding Customer Information set forth in 501 and 505 of the GLB Act (15 U.S.C. § 6801 and § 6805).

Security Breach Confidential Information.

Outside Agency agrees to notify PKW immediately, and agree to cooperate fully, in the event of any unauthorized access, any loss, or unauthorized disclosure of any Confidential Information, including without limitation, customer or employee information under your control. Except as may be required by law, the Parties agree to take no action with respect to notification of such unauthorized access to Confidential Information without the other Party's express consent and according to specific instruction.

Proper Disposal of Consumer Information.

Both parties represent that in accordance the FCRA and the FTC Final Rule, 16 CFR, Part 682 that they have implemented reasonable measures to protect against unauthorized access or use of the information in connection with the disposal of consumer information as that term is defined in the FTC Final Rule. As is the case, database information shall not be printed or otherwise stored with the exception of internal electronic notes within an approved database such as WebTracker.

19.   APPLICABLE LAW.

The parties agree that the interpretation and enforcement of this Agreement shall be governed by California law.

20.   VENUE AND JURISDICTION.

The parties agree that venue of any action brought to interpret or enforce this Agreement shall be in federal or state court in Sacramento County, California. Outside Agency agrees that this Agreement has been entered into in Sacramento County, California, and that Outside Agency will be subject to the jurisdiction of any federal or state court in California.

21.   INTEGRATED AGREEMENT, MODIFICATION.

This Agreement supersedes all prior oral or written agreements between the parties in any manner relating to the subject matter hereof, contains all the agreements

Initials: _____ Date: _____

OSA Contract January 2010   Page: 8

of the parties concerning such subject matter and shall not be amended or modified except by a written instrument executed by both parties.

22.  **ATTORNEYS' FEES**.

In any action between the parties to this Agreement, the prevailing party shall be entitled to an award of reasonable attorneys' fees and costs incurred, which shall include any such fees and costs incurred in connection with a bankruptcy proceeding (including but not limited to obtaining relief from any automatic or other stay), at trial, and on any appeal.

23.  **EXHIBITS**.

The exhibits attached hereto are hereby incorporated into this Agreement as if set forth in full.

24.  **COUNTERPARTS**.

This Agreement may be executed in one or more counterparts which, when taken together, shall constitute an entire agreement.


"REFERRAL AGENCY"                    "OUTSIDE AGENCY"

PATRICK K. WILLIS COMPANY, INC.,     TNT Recovery
dba American Recovery Service, and   (Type of entity, partnership, corp., sole
dba Skipbusters                      proprietorship)

By:_____         By: _Tom G Wol_____
Name:_____         Name: _Tom abh man___
Title :_____         Title: _Owner_____
Date: _____         Date: _2/8/2010_____

## CONTRACT ADDENDUM

## COMPENSATION; QUICK PAY DISCOUNT PROGRAM.

Outside Agency shall be compensated by Referral Agency for Outside Agency's services under this Agreement in accordance with the Fee Schedule set forth in Referral Agency's Policies and Procedures. Outside Agency may request to be assigned to Referral Agency's Quick Pay Discount Program by completing a contract addendum.

1.    **10% Weekly Quick Pay Discount Program**          (Option I)

   a.      Outside Agency submits all invoices to Referral Agency by facsimile between 10:00 a.m. and 12:00 noon PCT **each Tuesday** (Only!).

   b.      Referral Agency sends invoice payment check by US Postal to Outside Agency each Tuesday evening.

   c.    .  Referral Agency deducts 10% of the total sum dollar amount of the invoices they receive from Outside Agency.

   d.      It is understood that Outside Agency invoices are to be received by Referral Agency during the time period on each Tuesday only as described in section "a".

   e.      Outside Agency will fax invoices to: (916) 673-3211

   *(This is the only fax# that may be used for this program!)*

___ YES, please assign _____ (agency) to the Referral Agency 10% Quick Pay Discount Program. I understand that this option will effectuate the 1st Tuesday after the Referral Agency receives this fully executed agreement!

___ NO thanks, we do not wish to exercise this optional program at this time.

___ I already participate in this option.

Initials: *E-O*   Date: *2/5*                    OSA Contract Addendum          January 2010

2.   **5% Quick Pay Discount Program** – Paid Current Every Other Week (Option II)

    a.   Outside Agency submits all invoices to Referral Agency by facsimile between 10:00 a.m. PCT and 12:00noon Pacific **every other Thursday** (Only!).

    b.   Referral Agency sends invoice payment check by US Postal to Outside Agency every other Thursday evening of the same day that Referral Agency receives the invoices.

    c.   Referral Agency deducts 5% of the total sum dollar amount of the invoices they receive from Outside Agency.

    d.   It is understood that Outside Agency invoices are to be received by Referral Agency during the time period on every other Thursday only as described in section "a."

    e.   Outside Agency will fax invoices to: (916) 673-3211

    *(This is the only fax# that may be used for this program!)*

__YES, please assign (name of your agency) to the Referral Agency 5% Quick Pay Discount Program. I understand that this option will effectuate the 1st Thursday after the Referral Agency receives this fully executed agreement!

___ NO thanks, we do not wish to exercise this optional program at this time.

___ I already participate in this option.

TNT Recovery
Name of Outside Agency

Tom
(Print Name of Authorized Representative and Title)

Signature of Authorized Representative

2/8/2010
Date

Initials: C.O   Date: 2/8

OSA Contract Addendum          January 2010

Court:          United States District Court, Central District of California
Case No.:       15-CV-01573-PSG-JC
Case Name: Alejandra Mendez v. TNT Towing & Recovery, LLC, et al.

## PROOF OF SERVICE

I am a citizen of the United States, employed in the city and county of Sacramento. My business address is 2150 River Plaza Drive, Suite 450, Sacramento, California 95833-3883. I am over the age of 18 years and not a party to the above-entitled action. I am readily familiar with my employer's practices for collection and processing of correspondence for mailing with the United States Postal Service.

On March 28, 2016, I served the following document:

**MEMORANDUM OF CONTENTIONS OF FACTS AND LAW**

__X__   By Mail on the interested party(ies) in the case above-referenced, by placing a true copy of the above-referenced document(s) enclosed in a sealed envelope, with postage fully prepaid, in the designated area for outgoing mail in accordance with this office's practice whereby the mail is deposited in a U.S. mailbox in the city of Sacramento, California, after the close of the day's business at the address(es) as set forth below.

Alex M. Valenzuela                         Counsel for Defendant
Prindle, Amaro, Goetz, et al.              Othman Mohammed Emad
310 Golden Shore, Fourth Fl.
Long Beach, CA 90802

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this document was executed on March 28, 2016, at Sacramento, California.

_Luz Samosa_
Luz Samosa

HEFNER, STARK & MAROIS, LLP
Sacramento, California

3

Case No. 15-CV-1573-PSG
Mendez v. TNT Towing & Recovery, LLC, et al.

Memorandum of Facts and Law
K:\Patrick K Willis Co Inc\Mendez v (0052-0087)\pldg memo of facts and law.wpd